No. 3.—Thomas Willis, plaintiff in error, vs. Robert V Willis, adm'r, defendant in error.

In trover for negroes, the verdict was for the plaintiff for $2,700, "which," could "be satisfied by delivering to the plaintiff, the said slaves. within ten days." Within the ten days, one of the slaves died and another was attacked with a disease of which it shortly afterwards died.

*Held*, that the defendant was, nevertheless bound to pay the $2,700.

Illegality, from Baldwin Superior Court. Decided by Judge Hardeman, at February Term, 1857.

Robert V. Willis, administrator of Keziah Willis, deceased, brought trover against Thomas Willis, for the recovery of five negroes and other property, alleged to belong to his intestate.

At August Term, 1854, the jury returned the following verdict, "We the jury find for the plaintiff in this action, twenty-seven hundred dollars, which can be satisfied by delivering to the plaintiff, the said slaves within ten days, also, the further sum of five hundred dollars for hire of slaves, also, the cost of suit." Judgment was entered up on this verdict the 5th day of September, 1854. At the same term of the Court, a motion for a new trial was made and overruled, to which decision defendant excepted and carried the case up to the Supreme Court, May Term, 1855, when the judgment of the Court below was affirmed. At August Term, 1855, of Baldwin Superior Court, the said judgment of the Supreme Court was entered on the minutes and made the judgment of that Court, and execution on the original judgment was issued 8th September, 1855, and on the last day of the Term of said Court, defendant carried to plaintiff's house and left in the yard all the negroes recovered, except two, *Amos and Rosetta*, who had in the mean time died. The proof was, that Amos was taken sick on the 14th of September, 1854, and died on the 25th; that when visited by the physician for the first time on the 15th, he was too sick to be removed, and the physician judged he had been too sick the day pre-

vious. Rosetta died within the time, between the 5th and 15th of September, 1854.

When the negroes were brought by defendant to be delivered up, plaintiff said he should not receive them or consider them delivered, until he saw his attorney, who had before advised him not to receive them, and there was no proof that plaintiff afterwards had anything to do with the negroes, except to have them levied on and sold under his execution. On the 4th of October, 1855, the deputy Sheriff levied upon said slaves (four in number, there having been an increase of one since the commencement of the suit,) by virtue of said fi. fa., and sold the same on the first Tuesday in December, 1855, for the sum of $1,326, which was applied to said fi. fa.

Afterwards, there being still a large balance due on said execution, the Sheriff levied upon a lot of land (202½ acres) and two negroes belonging to defendant, and he interposed by affidavit of illegality, upon the grounds :

1st. Because the judgment on which the fi. fa. issued was rendered in an action of trover, and was conditional, and that upon the termination of the action, defendant delivered to plaintiff all the negroes recovered, except Amos and Rosetta, who had died pending the litigation and during the pendencey of the writ of error in the Supreme Court, and by the act of Providence he was prevented from delivering them.

2d. Because the amount of the valuation of said negroes, which had died, was not deducted from or credited on said fi. fa., nor is the value of those that were delivered up credited on the same.

After hearing the affidavit of illegality and argument thereon, the Court dismissed the same—no election to deliver the negroes having been made within the ten days allowed by the jury.

To which decision, defendant, by his counsel, excepts and assigns the same as error.

A. H. KENAN, for plaintiff in error.

McKINLEY, for defendant in error.

*By the Court.*—BENNING J. delivering the opinion.

What did the judgment give the plaintiff the right to have from the defendant? This:

1st. The cost of the suit; 2d. $500, *absolutely*; 3d. $2,700 *or* the slaves sued for, and them delivered to him in ten days. The words of the verdict, with respect to the $2,700, are, "We the jury find for the plaintiff in the action, twenty-seven hundred dollars, which can be satisfied by delivering to the plaintiff, the said slaves within ten days." Twenty-seven hundred dollars, in money or in negroes, then, the plaintiff became entitled to have from the defendant by the verdict. And, on the other hand, twenty-seven hundred dollars, in money or in negroes, the defendant became liable by the verdict, to pay to the plaintiff.

Now, it must be manifest that such a liability can be discharged by nothing short of a *payment*—a payment in the one thing or the other, in the money or in the negroes.

It follows, that if for any cause, the defendant, though electing to make the payment in negroes, was prevented from doing so, he was not in the least discharged from his liability to make the payment in money.

This is the result, if we confine our view to the mere terms of the verdict.

But the result would doubtless be the same, if we consulted only the principles of justice and expediency.

It is not certain that the negroes that died, would have died, if the defendant had never converted them to his own use. That conversion was a wrongful act. If, therefore, the loss occasioned by the death of those negroes, be made to fall on him, he will not be able to say that he did not bring the loss on himself.

Besides, suppose the negroes that died, had not died, would

the defendant have elected to pay the verdict in negroes or in money? As the evidence stands, it is impossible to say which he would have done.

We think, therefore, that the Court below was right in dismissing the affidavit of illegality.

Judgment affirmed.